LAMAR, Justice,
Dissenting to Part One:
¶ 65. I disagree with the majority’s conclusion that Doss received ineffective assistance of counsel under the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, I respectfully dissent.
¶ 66. In applying the test set forth in Strickland, “a court should keep in mind that the principles ... do not establish mechanical rules ... [and] the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.” Id. at 696, 104 S.Ct. 2052. Under the first prong, “the defendant must show that counsel’s representations fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. In assessing reasonableness, “every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052. Further, there is a strong presumption that counsel’s conduct was the result of sound trial strategy, and the reasonableness of an investigative decision “is substantially influenced by the defendant’s own statements or actions.” Id. at 689, 691, 104 S.Ct. 2052.
¶ 67. Under the prejudice prong, a “defendant must show that there is reasonable *719 probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. To assess prejudice, the court must reweigh the evidence in aggravation against the evidence in mitigation and determine whether “the balance of aggravating and mitigating circumstances did not warrant death.” Id. at 695, 104 S.Ct. 2052; see Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Therefore, the trial court had to determine whether there was a reasonable probability that the jury would not have imposed a sentence of death had it also heard the testimony and reviewed the evidence presented in 2006.
¶ 68. Under the proper standard of review, this Court cannot disturb the trial court’s factual findings unless they are clearly erroneous. Loden v. State, 971 So.2d 548, 572 (Miss.2007). This Court must give deference to the trial judge’s findings of fact, since he or she is the “ ‘sole authority for determining credibility of the witnesses.’ ” Id. (quoting Mullins v. Ratcliff, 515 So.2d 1183, 1189 (1987)). I find that this Court has improperly reweighed the evidence presented at the PCR hearing, and further, that it has improperly reviewed evidence that was not admitted before the trial court.
¶ 69. First, the majority provides a lengthy and unnecessary analysis of the affidavits attached to Doss’ motion for post-conviction relief.[11] The affidavits of Lee Bailey and Kelvin Winbush were never admitted into evidence before the trial court, and it is improper for this Court to consider them as evidence on appeal.[12] Second, the Court fails to consider any of the aggravators presented at the first sentencing hearing, and as a consequence, its conclusion of prejudice lacks foundation from the record.
¶ 70. In 1993, the jury heard testimony from Frank Coffey, Sadie Doss, and E.J. Bobo.[13] Coffey testified that Doss had traveled to Memphis, Tennessee, after the murder of Bell, and that Doss had committed a second murder in Memphis. Coffey confirmed that Doss had been convicted of second-degree murder. E.J. Bobo, an officer with the Calhoun Sheriffs Department, testified that Doss had a bad reputation for peace and violence.
¶ 71. Sadie Doss testified that Doss had finished the ninth or tenth grade. She testified that they had a “beautiful home,” and that Anthony was a “warm, beautiful person” who would prepare her food and help her when she was sick. However, Sadie also testified that she had relied on welfare when Doss lived with her. She stated that Doss had suffered two serious head injuries, one when he was eleven and one when he was seventeen. As to the effects of the head injuries, she testified that “[Doss] would have headaches. Some days he won’t say nothing. Then, the next day, he talk.” On cross-examination, Sadie admitted that Anthony had been convicted of second-degree murder in Tennessee.
*720 ¶ 72. At the conclusion of the sentencing hearing, the trial court presented the jury with the following instructions as to aggravating and mitigating factors:
Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
1. The defendant, Anthony Doss, was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.
2. The capital murder of Robert C. “Bert” Bell was committed while the defendant was engaged or was an accomplice, in the commission of armed robbery.
3. The capital murder of Robert C. “Bert” Bell was committed for the purpose of avoiding or preventing lawful arrest.
[[Image here]]
Consider the following elements of mitigation in determining whether the death penalty would [sic] not be imposed:
(1) The age of Defendant at the time of the crime.
(2) Loving and caring child to his mother.
(3) Grew up in poverty environment.
(4) Lack of significant father figure.
(5) Suffered head injuries which changed personality.
(6) The Defendant acted under extreme duress or under substantial domination of another person.
(7) The Defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor.
(8) Went into store with gun that wouldn’t fire.
(9) Lack of education.
(10) Intervened in [sic] behalf of Robert James.
After weighing the aggravators and miti-gators, the jury sentenced Doss to death.[14]
¶ 73. As the majority notes, the trial court conducted a PCR evidentiary hearing in 2006 and heard testimony from Lee Bailey, Q.T. Doss, Sadie Doss, Sandra Price, and Sam Phillips. Contrary to the majority’s conclusion, I find that Bailey did perform a reasonable investigation for mitigation evidence. First, Bailey was in contact with the Capital Defense Resource Group, which provided him with information regarding the defense of a death-penalty case. Bailey testified that he had utilized the materials provided to him.
¶ 74. Bailey also testified that he had obtained school, mental health, and medical records from Carolyn Watkins, Doss’ public defender in Memphis, Tennessee.[15] Bailey’s testimony reveals that the decision not to introduce these documents was strategic.[16] The following exchange took *721 place between Bailey and the State as to why he did not use these documents at the sentencing phase:
Q. There was a reason you didn’t want me [the prosecutor in the original trial] to even know about that stuff at the time, wasn’t it?
A. Well, I mean it, it has some information about other acts by Anthony.
Q. Robberies.
A. Yeah.
Q. As a matter of fact, he was being evaluated, according to him, because he had committed robberies. And he had been sent to the youth court there for robberies and drug treatment; is that right?
A. Correct.
Q. Also in the stuff that I never got at that time that is in the stuff that you did seek and get it showed that he was tested and his test scores showed his IQ at 80; is that correct?
A. Correct.
Q. You didn’t want me to have that either, did you?
A. No.
[[Image here]]
Q. Okay. Now, and we’ve talked about this. It was furnished in discovery. If all of this stuff that you had available to you had been presented, we would have possibly been able to, in addition to what the jury heard, been able to bring out that he had been charged with robber-les. He had been charged with selling drugs. He had been charged two days before this murder with shooting someone else in Bruce. All of that stuff would have possibly been able to have been brought out for the jury is that correct?
[objection to speculation; court allows questioning to continue]
Q. You know about all these other charges, don’t you, from the reports?
[[Image here]]
A. It was available.
Q. You had your file at that time.
A. Yeah.
¶ 75. The majority also takes issue with the fact that Bailey failed to investigate the extent of Doss’ head injuries. However, Bailey testified that further investigation was not warranted, since Doss could clearly communicate with him and was competent to stand trial. Bailey stated:
In talking with Anthony — I mean I spent some time talking with him. And I didn’t — I didn’t see where Anthony had a problem discussing this case with me. He told me everything about it. He explained how he grew up. I remember taking down notes about his early life.... I remember talking to him about different aspects of the case.
¶ 76. Bailey also relied in part on Doss and Sadie[17] to provide names of potential witnesses to testify at the sentencing hear *722 ing. Bailey testified that he had “no reason to believe that there was anyone in Chicago that could help Anthony Doss.” Doss and Sadie provided only the name of one witness, Mark Hendricks, the Chief of Police in Derma, Mississippi. Doss worked for Hendricks as a confidential informant on drug cases. Bailey wanted to introduce this testimony, but if Hendricks had testified, the State was prepared to cross-examine Hendricks on several criminal violations involving Doss. While Bailey filed a motion in limine to exclude this testimony, the trial court denied it.
¶ 77. Bailey also obtained court funds to hire an investigator, Kelvin Winbush. Winbush located and interviewed seven potential witnesses: Lillie Moore, Doss’ aunt; Coach Smith, Doss’ former physical education teacher; Marvin Joe Doss, Doss’ brother; Randy Doss, Doss’ brother; Lu-cretian Monger, Doss’ sister; and Mavis McCaster, Doss’ sister. Bailey decided not to use them as witnesses, since their testimony would not have been mitigating.
¶ 78. The majority also argues that a proper investigation would have yielded the testimony of Q.T. Doss, Sandra Price, and Sam Phillips, in addition to the expanded testimony of Sadie Doss. Q.T. Doss, Doss’ cousin, testified that they had spent time together and had done yard work together when Doss visited Mississippi, and later when Doss moved back from Chicago as a teenager. Q.T. stated that Doss was a quiet person and a follower, not a leader. Q.T. testified that Doss eventually had begun to hang around with Frederick Bell, and Q.T. felt that Bell was a bully and troublemaker. Q.T. testified that Doss knew how to defend himself, but Q.T. was unaware of Doss having a gun.
¶ 79. At the 2006 hearing, Sadie testified that she had drank alcohol regularly when she was pregnant with Doss, that she had contracted gonorrhea at around that time, and Sam Brown had beaten her to the point that she had almost miscarried. She testified that other members of her family had suffered from mental problems. Sadie stated that she did not tell strangers about these problems, and that Bailey did not ask anything about the private details of her life.
¶ 80. Sandra Price testified that Sam Brown was her father and that she had lived with Brown, Sadie, and Doss in Chicago. Price confirmed at the 2006 hearing the brutal treatment the family had received from Sam Brown, who was also a drug user. She stated that Doss was a quiet person who generally stayed to himself. Price also testified that the family had lived in a neighborhood where gang activity and violence were common. Sandra denied that she had seen Sadie abuse alcohol or drugs. She testified that in 1989, she had been raped and beaten by a gang of men who broke into their residence, and that Doss also had been beaten by these intruders. The State suggested that the attack was in retaliation for Doss’ selling drugs.
¶ 81. Sam Phillips testified at the 2006 hearing that he was the biological father of Anthony Doss and that he and Sadie had never married. Phillips also testified that he had raised two children who had never been in trouble with the law. Phillips further testified that he had repeatedly told Doss to stop selling drugs and leave the streets.
¶ 82. The trial court concluded that Bailey had provided effective assistance of counsel to Doss. The court summarized Bailey’s testimony and concluded that Bailey was not to blame for Doss and Sadie’s “lack of forthrightness.” The circuit court also found that Lee Bailey had no trouble communicating with Doss, and Doss did not appear to be insane. The court also *723 noted that at the time of Doss’ trial, execution of the mentally retarded was not prohibited. The circuit court found that nothing in the records indicated that Doss was mentally retarded, or that Bailey should have consulted a mental-health expert.
¶ 83. The trial court was presented with conflicting testimony from Sadie. Her testimony on alcohol abuse and mental problems contradicted her 1993 testimony and the information that she had provided in the 1988 Psychological Report. Furthermore, Sandra Price testified that Sadie did not drink or abuse drugs. The court concluded that “a mother’s testimony would be somewhat suspect and totally biased in favor of her child facing the death penalty.”
¶ 84. As for Sandra Price’s testimony, the trial court found that the sympathy that she may have generated for Doss would have been offset by her testimony that she believed Doss had not murdered anyone. Further, the court also found that the jury would have been concerned by her testimony that Doss’ actions may have triggered the home invasion.
¶ 85. The trial court also found that the testimony of Q.T. Doss and Sam Phillips would not have swayed the jury to impose a sentence other than death. The trial court concluded that Q.T. Doss’ testimony “would have indicated to the jury that Anthony was making a conscious decision to associate with persons of bad character.” The trial court also found that Phillips’s testimony that Anthony would have been better off raised in his household was pure speculation.
¶ 86. After reviewing the evidence presented at the 2006 hearing, the trial court concluded in a thorough, thirty-seven-page opinion that the jury still would have sentenced Doss to death. After reviewing the record, I cannot say that the trial court’s findings of fact are clearly erroneous. Bailey certainly undertook a reasonable investigation that yielded little mitigation evidence. Doss and Sadie (along with the seven family members when Winbush interviewed) failed to disclose any details of Doss’ life in Chicago, and Doss failed to exhibit any mental deficiencies. Under Strickland* the “reasonableness of an investigative decision ‘is substantially influenced by the defendant’s own statements or actions.’ ” Strickland, 466 U.S. at 689, 691, 104 S.Ct. 2052.
¶ 87. Furthermore, I do not find that there is a reasonable probability that, but for Bailey’s (alleged) errors, the outcome would have been different. While the evidence presented in 2006 would have garnered some sympathy, it also would have acted as a double-edged sword by referencing Doss’ propensity for violence and substance abuse. See Burger v. Kemp, 483 U.S. 776, 791-95 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). Furthermore, the majority affords no deference to the trial court’s findings of fact, and in my opinion, has improperly reweighed the evidence to conclude with hindsight that Doss received ineffective assistance of counsel. I would affirm the trial court’s judgment that Doss received effective assistance of counsel at the penalty phase of this trial.
CARLSON, P.J., RANDOLPH AND PIERCE, JJ., JOIN THIS OPINION.

. As noted by the majority, I summarized some of the affidavits in my original opinion, Doss v. State, which is being withdrawn. Unlike the majority, I did not characterize these affidavits as evidence, which they are not.

. The trial court noted that Bailey’s 2006 testimony conflicted with his affidavit. At the time Bailey signed his affidavit, he was unable to locate certain records or review Doss' file, which he had given to Doss’ post-conviction relief counsel.

.All evidence that was admitted at the guilt phase was also reintroduced at the sentencing phase. See Doss v. State, 709 So.2d 369 (Miss.1996), for discussion of the underlying facts of this case.

. The jury unanimously found that all aggra-vators existed beyond a reasonable doubt.

. The record shows that Bailey contacted Watkins on three, separate occasions.

. The undated Discharge Summary mentioned that Doss’ "legal problems stem from robberies,” that he drank alcohol regularly, had tried other drugs, and that he had an estimated IQ of 80.
The 1988 Psychological Report stated that Doss had been placed on probation with the Calhoun County Youth Court as a result of guilty pleas to breaking and entering, possession of marijuana, and causing a family disturbance. The report also stated that Doss had robbed an elderly man in Chicago. It mentioned that Doss had primarily attended special education classes in Chicago, but had been mainstreamed into some regular classes in junior high school, where he had achieved some success. It stated that Doss wanted to go back to Chicago, and that he had a 71 IQ after testing. It further provided that Doss' mental difficulties might have an organic basis. The report made no mention of Sadie’s drinking problems and the terrible existence *721 she described in living with Sam Brown in Chicago.

. The majority incorrectly states that Bailey spoke only once with Sadie via telephone. Bailey testified: "I had several — I had telephone calls. I say several. I don’t think there was but maybe one or two on my time-sheet, but I know I talked to her more times than that by telephone.”
The majority also concludes that Bailey failed to elicit personal information from Sadie at the first sentencing hearing. His failure to question Sadie as to the information that she testified to in 2006 was a direct consequence of her failure to provide that information to him. In reviewing the mitigating instruction submitted at the first sentencing hearing, as well as Sadie’s testimony, it is evident that Bailey did in fact try to solicit personal information that is crucial at the sentencing phase.